IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PATHFINDER AVIATION, INC., )
)
                    Plaintiff, )
)
    vs. )
)
XTO ENERGY INC. and SCOTT GRIFFITH, )
)   No. 3:15-cv-0200-HRH
             Defendants. )
_____)

O R D E R

Motion to Dismiss; Motion for Leave to Amend

Defendants move to dismiss certain counts of plaintiff's complaint.[1] This motion is opposed,[2] but in the event that the court dismisses any counts, plaintiff moves for leave to amend.[3] The motion for leave to amend is opposed.[4] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 10.

[2]Docket No. 14.

[3]Docket No. 12.

[4]Docket No. 18.

-1-

Background

Plaintiff is Pathfinder Aviation, Inc. Defendants are XTO Energy Inc. and Scott Griffith.

Plaintiff "is a Homer-based international provider of helicopter services and logistical support, providing services to the oil and gas, mining and construction industries."[5] Michael Fell is the owner and president of plaintiff.[6]

"XTO is a subsidiary of Exxon Mobil. Its Alaska Operations focused on oil production in the Cook Inlet...."[7] During the time at issue in this case, "Griffith served as the production superintendent for the Alaska Operations division of XTO."[8]

Plaintiff alleges that "[i]n June 2014, Griffith contacted Fell and stated that he wished to discuss helicopter support for XTO's Alaska Operations due to XTO's dissatisfaction with its current provider."[9] Plaintiff further alleges that in January 2015, "Fell and Griffith together targeted a specific helicopter airframe that met XTO's particular contract

---

[5]Complaint at 2, ¶ 7, Exhibit A, Notice of Removal, Docket No. 1.

[6]Id.

[7]Id. at ¶ 6.

[8]Id.

[9]Id. at ¶ 8.

requirements: an Airbus EC135P2+."[10] "Thereafter, XTO's aviation management team met with Pathfinder to perform a 'gap analysis' of Pathfinder's assets and services, after which XTO determined that Pathfinder qualified as an acceptable vendor."[11]

Plaintiff alleges that "[o]n February 25, 2015, Griffith sent an email to Fell which stated, 'per our conversation, XTO Energy has made the decision to go with Pathfinder Aviation as our helicopter support contractor for our Alaska Operations.'"[12] In the same email, Griffith advised Fell that he would begin drafting a contract that would include terms that the parties had discussed, including the length of the contract (10 years) and the price plaintiff would be paid for its services ($176,636 per month, plus $1,100 per flight hour).[13] Plaintiff alleges that "[t]he email also confirmed that XTO Energy planned to enter into an additional agreement with Pathfinder whereby if the primary helicopter – the Airbus EC135P2+ – was taken off the XTO contract in support of other aviation clientele, XTO would pay for the use of a twin-engine Bell 212 helicopter for backup, up to the first 12 months of the contract or less."[14]

---

[10] Id. at ¶ 9.

[11] Id.

[12] Id. at 3, ¶ 11.

[13] Id. at ¶¶ 11-12.

[14] Id. at 4, ¶ 14.

Plaintiff alleges that "[a]fter the February confirmation email and over the course of spring 2015, [it] worked to acquire the additional aircraft and to arrange for [the] modifications to conform to XTO's operation guidelines."[15] Plaintiff further alleges that it "purchased ground support equipment, helicopter support equipment, and devoted hundreds of labor hours into ensuring that [its] personnel and equipment complied with XTO's requirements and needs."[16] Plaintiff alleges that it expended over $400,000 on this equipment and preliminary work.[17] Plaintiff alleges that "[o]ver the course of spring 2015, Fell and Griffith worked together on minor remaining details of the contract between XTO and Pathfinder."[18]

Plaintiff alleges that it "acquired two helicopters for the XTO contract: a Bell 212 purchased for over $1.2 million, and an Airbus EC135P2+ purchased for over $3.5 million."[19] Plaintiff further alleges that "[d]ue to the significant cost, Fell contacted Griffith prior to purchasing the Airbus to again confirm the agreement between the two parties.

---

[15]Id. at ¶ 16.

[16]Id.

[17]Id.

[18]Id. at ¶ 17.

[19]Id. at 5, ¶ 18.

-4-

Griffith advised Fell that the contract between the two parties was good, and instructed Fell to proceed with the purchase of the aircraft."[20]

Plaintiff alleges that "[i]n July 2015, within a week of [its] purchase of the Airbus EC135P2+, XTO was acquired by Hilcorp Alaska, LLC. Griffith called Fell and told him that XTO would not be going forward with its contract with Pathfinder."[21] Plaintiff alleges that "[a]fter this communication, Fell attempted to contact [d]efendants regarding the contract, to no avail."[22] Plaintiff alleges that "[s]ince XTO's notification, and in order to avoid a monthly payment in excess of $40,000 on the helicopters, Pathfinder sold the Bell 212 helicopter at a loss of over $140,000 and sold the Airbus EC135P2+ at a loss of over $1 million."[23]

On September 15, 2015, plaintiff commenced this action. In its complaint, plaintiff asserts six counts against defendants: 1) breach of contract, 2) breach of quasi-contract and quantum meruit, 3) promissory estoppel, 4) breach of the covenant of good faith and fair dealing, 5) misrepresentation, and 6) violation of Alaska Unfair Trade Practices Act.

---

[20]Id.

[21]Id. at ¶ 19.

[22]Id. at ¶ 20.

[23]Id.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss Counts I-IV against Griffith, Count IV against XTO, and Counts V and VI against both defendants and to strike plaintiff's prayer for punitive damages. Plaintiff moves for leave to amend as to any counts that the court dismisses.

Discussion

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests." Zixiang Li v. Kerry, 710 F.3d 995, 998 (9th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)). "To survive a Rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" Turner v. City and County of San Francisco, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008)). "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" Id. (quoting Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "This standard 'asks for more than a

sheer possibility that a defendant has acted unlawfully,' but it 'is not akin to a probability requirement.'" Id. (quoting Iqbal, 556 U.S. at 678). When ruling on a Rule 12(b)(6) motion, the court generally does not "consider any material beyond the pleadings...." Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1007 (9th Cir. 2015). Thus, in deciding defendants' Rule 12(b)(6) motion, the court has not considered the exhibits and the Fell affidavit that plaintiff has submitted. "Although a district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, [d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment[.]" Zixiang Li, 710 F.3d at 999 (internal citations omitted).

Counts I-IV against Griffith

Contrary to defendants' contention, plaintiff has not agreed that the contract-based claims in Counts I-IV against Griffith should be dismissed. Plaintiff does agree with defendants that "[a]s a general principle an employee 'cannot be held liable for the breach of a contract between the employer and another party.'" Beal v. McGuire, 216 P.3d 1154, 1175 (Alaska 2009) (quoting Rathke v. Corr. Corp. of Amer., Inc., 153 P.3d 303, 312 (Alaska 2007)). But, an employee may be liable for breach of contract claims if he was not acting within the scope of his employment.

Plaintiff has not expressly alleged that Griffith was acting outside the scope of his employment. Rather, plaintiff has alleged that "Griffith was employed by XTO, and

-7-

therefore, all the acts and omissions of Griffith ... will be imputed to XTO"[24] and that Griffith was employed "as the production superintendent for the Alaska Operations division of XTO."[25] Plaintiff, however, argues that it can be inferred from its complaint that it was alleging that Griffith was not acting within the scope of his employment because otherwise it would not have asserted contract-based claims against Griffith.

This is not a reasonable inference to make from plaintiff's complaint. All of the allegations in plaintiff's complaint and the inferences that can be drawn from them are that Griffith was acting within the course and scope of his employment. Thus, plaintiff's contract-based claims in Counts I-IV against Griffith are dismissed.

Plaintiff requests leave to amend these claims because although it "believes that Griffith was acting in the course and scope of his employment with [XTO] at all relevant times, ... until discovery takes place[26], Pathfinder is unable to conclusively determine the

---

[24]Complaint at 1, ¶ 3, Exhibit A, Notice of Removal, Docket No. 1.

[25]Id. at 2, ¶ 6.

[26]Plaintiff attached Early Rule 34 discovery requests to its motion for leave to amend, which was filed on November 25, 2015, even though the rule permitting such requests did not go into effect until December 1, 2015. Plaintiff seems to suggest that defendants filed the instant motion to dismiss to avoid having to respond to these discovery requests or that defendants have failed to respond to these requests. As for the first suggestion, defendants were entitled to file a Rule 12(b)(6) motion prior to filing their answer and plaintiff's repeated assertion that there was something improper about defendants doing so is meritless. As for the second suggestion, an Early Rule 34 "request is considered to have been served at the first Rule 26(f) conference." Fed. R. Civ. P. 26(d)(2)(B). Thus, plaintiff's
(continued...)

-8-

truth of this assertion."[27]  Plaintiff seeks to add a sentence to paragraph 3 of its complaint so that it reads as follows:

> [Griffith] is and was at all times relevant hereto a resident of, and domiciled in, the State of Alaska.[28]  On information and belief, Griffith was employed by XTO, and therefore, all acts and omissions of Griffith, as described herein, will be imputed to XTO.  In the alternative, Griffith was not acting in the course and scope of his employment with [XTO] and therefore he will be personally liable for all such acts and omissions.[29]

Although plaintiff seems to suggest that it will not have any factual support for this alternative allegation until discovery takes place, it offers an August 14, 2015 correspondence in which it contends that XTO took the position that Griffith was not acting with the course and scope of his employment.  Plaintiff contends that the court can consider the exhibits and the Fell affidavit it has submitted when deciding whether to allow amendment.  Plaintiff cites to no authority to support this contention and there is authority to the contrary.  See, e.g., Gross v. Hanover Ins. Co., Case No. 91 Civ. 0079 (PKL), 1991 WL

---

[26](...continued)
Early Rule 34 discovery requests have not yet been "served" on defendants and defendants have no current obligation to respond to these requests.

[27]Opposition to Motion to Dismiss at 14, Docket No. 14.

[28]Griffith had moved to Oklahoma by the time plaintiff filed its complaint.  Affidavit of Scott A. Griffith, Exhibit B, Errata to Notice of Removal, Docket No. 3.

[29]Memorandum in Support of Cross-Motion for Permission to File an Amended Complaint at 16, Docket No. 13.

102401, at *1 n.1. (S.D.N.Y. 1991) ("Defendant's submission of four affidavits and numerous exhibits in opposition to plaintiff's motion to amend, as well as plaintiff's less voluminous reply affidavit and exhibits, will not be considered, as the instant motion is one to amend the complaint, not one for summary judgment"). The court will not consider plaintiff's exhibits and affidavit when deciding whether plaintiff may amend its claims.

Plaintiff may not amend as to Counts I-IV against Griffith. In defendants' response to plaintiff's motion to amend, "XTO confirms ... that Griffith was acting in the course and scope of his employment with XTO at all times relevant to the events alleged in [p]laintiff's complaint."[30] In the Ninth Circuit, "statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." Amer. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 227 (9th Cir. 1988). The court will exercise its discretion and consider this statement a judicial admission, primarily because even plaintiff seems to believe that Griffith was acting within the scope and course of his employment. Because XTO has admitted that Griffith was acting within the course and scope of his employment at all relevant times, plaintiff could never state plausible contract-based claims against Griffith. Counts I-IV against Griffith are dismissed without leave to amend.

---

[30]Defendants' Response to Motion to File Amended Complaint at 11, Docket No. 18.

-10-

Count IV against XTO

In Count IV, plaintiff alleges a breach of the implied covenant of good faith and fair dealing claim. "Every contract in Alaska includes an implied covenant of good faith and fair dealing." Smith v. Anchorage School Dist., 240 P.3d 834, 844 (Alaska 2010). "The covenant has both a subjective and an objective component.'" Id. (quoting Mitchell v. Teck Cominco Alaska, Inc., 193 P.3d 751, 761(Alaska 2008)). In order to show that a defendant breached the objective component of the implied covenant of good faith and fair dealing, a plaintiff must prove that a reasonable person would find that the defendant acted in manner that was unfair or improper. Becker v. Fred Meyer Stores, Inc., 335 P.3d 1110, 1116 (Alaska 2014). In order to show that a defendant subjectively breached the implied covenant of good faith and fair dealing, a plaintiff must prove that the defendant's conduct was "'actually ... motivated by an improper or impermissible objective' — that the [conduct] 'was actually [done] in bad faith.'" Crowley v. State, Dept. of Health & Social Services, 253 P.3d 1226, 1230 (Alaska 2011) (quoting Era Aviation, Inc. v. Seekins, 973 P.2d 1137, 1141 (Alaska 1999)).

Plaintiff alleges that XTO breached the implied covenant because its "refusal to honor [XTO's] contract with Pathfinder unfairly deprived Pathfinder of the benefit of its contract" and because XTO refused "to engage in reasonable efforts to negotiate the

-11-

termination of the contract...."[31]  Plaintiff argues that it has adequately stated a claim for breach of the implied covenant because it can be inferred from these and other allegations that 1) XTO knew for weeks, if not months, that it was likely to sell its Alaskan operations to Hilcorp and yet XTO said nothing to Pathfinder, 2) that XTO planned all along to breach the contract with Pathfinder but still allowed Pathfinder to incur considerable expense, 3) that XTO did so as a means to try to put Pathfinder out of business, 4) that XTO used Exxon's economic strength as a weapon against Pathfinder seeking to maliciously cause injury, and 5) that XTO intentionally delayed signing the contract in order to disclaim any responsibility to keep the promises made to Pathfinder.  Plaintiff argues that these are reasonable inferences that can be drawn from the timing of the events, XTO's unwillingness to sign the written contract, and XTO's refusal to communicate with plaintiff after XTO was acquired by Hilcorp.

The inferences plaintiff is asking the court to make are unreasonable.  There is nothing in plaintiff's complaint that suggests that XTO knew for months that it was going to be sold to Hilcorp,[32] that XTO planned all along to breach the alleged contract, that XTO maliciously intended to injure plaintiff or was trying to put plaintiff out of business, or that

---

[31]Complaint at 8, ¶¶ 38-39, Exhibit A, Notice of Removal, Docket No. 1.

[32]In its reply in support of its motion to amend, plaintiff contends that it is undisputed that XTO was in negotiations with Hilcorp for months, but as explained above, the court will not consider the exhibits and affidavit plaintiff has submitted in deciding either the motion to dismiss or the motion for leave to amend.

XTO intentionally delayed signing the contract. Plaintiff has not alleged sufficient factual support to make its claim of bad faith against XTO plausible. All it has alleged is that XTO breached the alleged contract and then refused to communicate with plaintiff. Because plaintiff has not stated a plausible breach of the implied covenant of good faith and fair dealing claim against XTO, this claim is dismissed.

Plaintiff requests leave to amend its breach of the implied covenant of good faith and fair dealing claim by adding the following paragraph to its complaint:

> Defendants' conduct in violation of the implied-in-law covenant of good faith and fair dealing, includes, but is not limited to the following: (a) [XTO] and Griffith knew for weeks, if not months, that it was likely to sell its Alaskan operations to Hilcorp and yet said nothing to Pathfinder; (b) [XTO] and Griffith planned all along to breach the contract with Pathfinder, but still allowed Pathfinder to incur considerable expense; (c) [XTO] and Griffith allowed Pathfinder to incur enormous expenses knowing that it would not honor its contract, as a means to try to put Pathfinder out of business; (d) [XTO] and Griffith used Exxon's economic strength as a weapon against Pathfinder seeking to maliciously cause injury; and (e) [XTO] and Griffith intentionally delayed signing the written contract as a means to disclaim any responsibility to keep the promises made to Pathfinder.[33]

Plaintiff may amend its claim of bad faith against XTO, although the foregoing proposed amendment is not sufficient. Plaintiff is reminded that it may only amend its claim of bad faith as to XTO, that any such claim against Griffith has been dismissed

---

[33]Memorandum in Support of Cross-Motion for Permission to File an Amended Complaint at 18-19, Docket No. 13.

without leave to amend. Plaintiff is also reminded that it must allege sufficient factual support for any of the claims it asserts. It is the court's current perception that plaintiff may be able to allege sufficient factual support for its contention that XTO knew for months that it was likely to be acquired by Hilcorp but said nothing to plaintiff and for its contention that XTO intentionally delayed signing the written contract because of the possibility of the Hilcorp acquisition. But, the court has doubts that plaintiff could allege sufficient factual support for its other contentions of bad faith on the part of XTO.

Count V

In Count V, plaintiff asserts intentional and negligent misrepresentations claims based on the allegations that defendants "promised to pay Pathfinder a monthly and flight-hour rate for a term of ten years as XTO's helicopter support contractor" and that they "promised to pay Pathfinder a flight-hour rate for back-up helicopter services."[34] Plaintiff alleges that "[t]he promises made to Pathfinder were false because the [d]efendants did not, in fact, perform any of those promises."[35]

The elements of an intentional misrepresentation claim are "(1) a false representation of fact, (2) knowledge of the falsity of the representation, (3) intention to induce reliance, (4) justifiable reliance, and (5) damages." Jarvis v. Ensminger, 134 P.3d 353, 363 (Alaska

---

[34]Complaint at 8, ¶¶ 42-43, Exhibit A, Notice of Removal, Docket No. 1.

[35]Id. at ¶ 44.

-14-

2006). Plaintiff's intentional misrepresentation claim as currently pled is implausible. Plaintiff has not alleged that defendants knew at the time they were negotiating a contract with plaintiff that they were not going to go forward with the contract. It cannot be inferred from the allegation that "the promises made to Pathfinder were false" that defendants knew the promises were false when made. It does not necessarily follow that because a statement turned out to be false, the person who made the statement knew it was false at the time it was made. Because plaintiff has not stated a plausible intentional misrepresentation claim, this claim is dismissed.

The elements of a negligent misrepresentation claim are

> (1) the party accused of the misrepresentation must have made the statement in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, (2) the representation must supply false information, (3) there must be justifiable reliance on the false information supplied, and (4) the accused party must have failed to exercise reasonable care or competence in obtaining or communicating the information.

Reeves v. Alyeska Pipeline Service Co., 56 P.3d 660, 670-71 (Alaska 2002) (citations omitted). Plaintiff has failed to state a plausible negligent misrepresentation claim.

> [A] cause of action for negligent misrepresentation is complete when the injured party has suffered a pecuniary loss as a result of the misrepresentation. To that extent, future occurrences can be related back to the time when the misrepresentation which resulted in the loss was made. However, to establish liability under this theory it is not enough to demonstrate that subsequent occurrences made an originally-accurate represen-

-15-

> tation ultimately false. For a representation to be actionable, ... the representation must be false when made.

Bubbel v. Wien Air Alaska, Inc., 682 P.2d 374, 381 (Alaska 1984). While negligent misrepresentation does not require "proof that the maker knew of the untrue character of his or her representation[,]" it does require proof that the statement was false when made. Id. Plaintiff has not alleged that the promises defendants made were false at the time they were made. All plaintiff has alleged is that defendants' statements were false, which is insufficient to state a plausible negligent misrepresentation claim. Thus, plaintiff's negligent misrepresentation claim is dismissed.

Plaintiff requests leave to amend its misrepresentation claims by adding the following allegation: "[d]efendants knew that they would not fulfill these promises, making them false promises, at the time the promises were made."[36] This proposed amendment is insufficient because it is a conclusory allegation that simply recites required elements of plaintiff's misrepresentation claims. But, it might be possible for plaintiff to allege some factual support for its contention that defendants' statements were false when made and that defendants knew their statements were false when made. Plaintiff is given leave to amend its misrepresentation claims.

---

[36]Memorandum in Support of Cross-Motion for Permission to File Amended Complaint at 22, Docket No. 13.

-16-

Count VI

In Count VI, plaintiff asserts a violation of the Alaska Unfair Trade Practices Act (UTPA) claim. "Two elements must be proved to establish a prima facie case of unfair or deceptive acts or practices under the Alaska Act: (1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred." State v. O'Neill Investigations, Inc., 609 P.2d 520, 534 (Alaska 1980). "An act or practice is deceptive or unfair if it has the capacity or tendency to deceive." Id. "An act or practice need not be 'deceptive' to be 'unfair.'" Id. at 535. Factors the court may consider when determining whether an act or practice is unfair include

> "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."

Id. (quoting F. T. C. v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972)). Alaska law requires a plaintiff to demonstrate that the defendant did something more egregious than breach a contract or assert the non-existence of a contract. Kenai Chrysler Center, Inc. v. Denison, 167 P.3d 1240, 1256 (Alaska 2007); see also, Alaska Rent-A-Car, Inc. v. Cendant Corp., Case No. 3:03–cv–00029–TMB, 2007 WL 2206784, at *22 (D. Alaska July 27, 2007)

-17-

("The fact that an act is a breach of a contractual obligation does not, ipso facto, render it an unfair trade practice").

Plaintiff alleges that

> [d]efendants engaged in unfair and deceptive practices, including, but not limited to, the following: misrepresenting their intent to contract with and pay Pathfinder for its services, for representing that Pathfinder's services ha[d] approval and status that [they] did not have; by engaging in conduct creating a likelihood of confusion or misunderstanding which misled, deceived and damaged Pathfinder in connection with the sale of goods and services, and by knowingly making false or misleading statements concerning the need for parts, replacement, or repair services.[37]

These allegations are insufficient to state a UTPA claim because all plaintiff has alleged is that defendants breached the alleged contract. Because something more than a breach of a contract is required for a UTPA claim, plaintiff has failed to state a plausible UTPA claim, and this claim is dismissed.

Plaintiff is given leave to amend its UTPA claim. But, plaintiff is again reminded that it must allege factual support for any claim it is asserting. Plaintiff cannot wait until after discovery has taken place to state plausible claims. See Iqbal, 556 U.S. at 678-79 (a plaintiff cannot "unlock the doors of discovery ... armed with nothing more than conclusions"); Twombly, 550 U.S. at 558 (citation omitted) (if the "allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic

---

[37]Complaint at 9, ¶ 43, Exhibit A, Notice of Removal, Docket No. 1.

-18-

deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the Court").

### Punitive Damages

Defendants move to strike plaintiff's prayer for punitive damages because all of plaintiff's tort claims are subject to dismissal. However, because plaintiff is being allowed to amend some of its tort claims, plaintiff's prayer for punitive damages will not be stricken.

### Conclusion

Defendants' motion to dismiss certain claims is granted, but defendants' motion to strike plaintiff's prayer for damages is denied.

Plaintiff's motion for leave to amend is granted in part and denied in part. The motion is granted as to plaintiff's breach of the implied covenant of good faith and fair dealing claim against XTO, plaintiff's misrepresentation claims against both defendants, and plaintiffs' UTPA claim against both defendants. The motion for leave to amend is denied as to Counts I-IV against Griffith.

Plaintiff's amended complaint, should plaintiff elect to file one, shall be filed on or before February 16, 2016.

DATED at Anchorage, Alaska, this 1st day of January, 2016.

/s/ H. Russel Holland
United States District Judge