IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PATHFINDER AVIATION, INC.,  )
                            )
          Plaintiff,        )
                            )
   vs.                      )
                            )
XTO ENERGY INC. and SCOTT GRIFFITH, )
                            )   No. 3:15-cv-0200-HRH
          Defendants.       )
_____)

O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiff's negligent misrepresentation and UTPA claims and to strike plaintiff's prayer for punitive damages.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Pathfinder Aviation, Inc. Defendants are XTO Energy Inc. and Scott Griffith.

---

[1]Docket No. 22.

[2]Docket No. 24.

-1-

Plaintiff "is a Homer-based provider of helicopter services and logistical support..., providing services to the oil and gas, mining and construction industries."[3] Michael and Mary Fell are plaintiff's owners and Michael Fell ("Fell") is the president of plaintiff.[4]

"XTO is a subsidiary of ExxonMobil.... Its Alaska Operations focused on oil production in the Cook Inlet...."[5] During the time at issue in this case, "Griffith served as the production superintendent for the Alaska Operations division of XTO."[6]

Plaintiff alleges that "[o]n June 4, 2014, XTO reached out to Pathfinder to explore the possibility of hiring [Pathfinder] to support its Alaskan operations because it was not happy with its current provider of transportation services."[7] Plaintiff alleges that in January 2015, "Fell and Griffith met ... to discuss the acquisition of a specific helicopter airframe that met XTO's particular contract requirements: An Airbus EC135P2+...."[8] Plaintiff further alleges that "[t]hereafter, XTO's aviation management team met with Pathfinder to perform a 'gap analysis' of Pathfinder's assets and services, after which XTO

---

[3]First Amended Complaint at 3, ¶ 8, Docket No. 21.

[4]Id.

[5]Id. at 2, ¶ 7.

[6]Id.

[7]Id. at 3, ¶ 10.

[8]Id. at ¶ 11.

determined that Pathfinder qualified as an acceptable vendor."[9]

Plaintiff alleges that "[o]n February 25, 2015, Griffith and Fell had a telephone conversation wherein Griffith announced that Pathfinder had been awarded the contract and would be XTO's transportation services provider."[10] Plaintiff alleges that Griffith sent Fell a follow-up email, in which Griffith stated that "XTO Energy has made the decision to go with Pathfinder Aviation as our helicopter support contractor for our Alaska Operations. I will begin working immediately to put the contract together under the terms we have discussed."[11] Plaintiff alleges that as of February 25, 2015, the parties had agreed upon the length of the contract (10 years), the effective date of the contract (September 1, 2015), and the price plaintiff would be paid for its services ($176,636 per month, plus $1,100 per flight hour).[12] Plaintiff alleges that "[t]he February 25, 2015 email also included details regarding a start-up fee of $50,000 and a termination clause."[13] "The February 25, 2015 email also confirmed that XTO Energy planned to enter into an additional agreement with Pathfinder whereby if the primary helicopter – the Airbus EC – was taken off the XTO contract in support of other aviation clientele or for repairs and maintenance, XTO would

---

[9] Id.

[10] Id. at 4, ¶ 13.

[11] Id. at ¶ 14.

[12] Id. at ¶ 15.

[13] Id. at ¶ 16.

pay for the use of a twin-engine Bell 212 helicopter for backup, up to the first 12 months of the contract."[14] And, plaintiff alleges that "[t]he February 25, 2015 email further indicated that XTO was about to notify its then-current helicopter provider, ERA Helicopters, that it would be terminating its contract and 'going in another direction.'"[15]

Plaintiff alleges that "[a]fter the February 25, 2015 confirmation email and over the course of the spring 2015, [it] worked to acquire the additional aircraft and to arrange for [the] modifications to conform to XTO's operation guidelines."[16] Plaintiff further alleges that it "purchased ground support equipment, helicopter support equipment, and devoted hundreds of labor hours into ensuring that [its] personnel and equipment complied with XTO's requirements and needs."[17] Plaintiff alleges that it expended over $400,000 on this equipment and preliminary work.[18]

Plaintiff alleges that "[o]ver the course of spring 2015, Fell and Griffith worked together on minor remaining details of the contract between XTO and Pathfinder."[19] Plaintiff further alleges that "Griffith continually communicated to Fell that there was an

---

[14]Id. at 5, ¶ 18.

[15]Id. at ¶ 19.

[16]Id. at ¶ 20.

[17]Id. at 6, ¶ 20.

[18]Id.

[19]Id. at ¶ 21.

enforceable and binding contract in place[.]"[20] Plaintiff alleges that these communications included a March 23, 2015 email, an April 30, 2015 email, and numerous verbal conversations.[21] Plaintiff alleges that in the March 23, 2015 email, Griffith "made clear that there was a binding contract in place with the use of quotations" and that in the April 30, 2015 email, Griffith "reiterat[ed] the existence of a 'ten year contract[.]'"[22]

Plaintiff alleges that despite Griffith's representation in the February 25, 2015 email that he would put the contract together immediately, "XTO delayed in signing the actual written contract."[23] Plaintiff alleges that Griffith finally emailed the written contract to Pathfinder on May 8, 2015 for Pathfinder's signature.[24] But, plaintiff alleges that Griffith never signed the written contract.[25]

Plaintiff alleges that while it "was diligently working on building the infrastructure needed to perform under the contract, XTO was in active negotiations with Hilcorp Energy,

---

[20]Id.

[21]Id.

[22]Id.

[23]Id. at ¶ 22.

[24]Id. at 7, ¶ 22.

[25]Id.

-5-

Inc. ('Hilcorp') regarding the sale of all of XTO's assets in Alaska[.]"[26] Plaintiff believes that XTO began discussions with Hilcorp in late 2014.[27] Plaintiff alleges that "XTO made a concerted effort not to make these negotiations public, and actively hid these negotiations from Pathfinder because it wanted Pathfinder to continue to build the infrastructure needed to support the transportation services contract in the event the sale with Hilcorp fell through...."[28]

Plaintiff alleges that "[b]ecause [it] was unaware that XTO was considering a sale to Hilcorp, it continued to work on putting the necessary equipment in place to support the contract, including the purchase of a Bell 212 helicopter for over $1.2 million."[29] Plaintiff further alleges that it "also located an Airbus EC that met XTO's standards and requirements with a purchase price of over $3.5 million."[30]

Plaintiff alleges that

> [j]ust prior to purchasing the Airbus EC, Fell received a call from a Hilcorp representative ... who was close to the negotiations between Hilcorp and XTO.... While the Hilcorp representative did not inform Fell that Hilcorp was about to purchase XTO, he did instruct Fell to be very careful when dealing with

---

[26]Id. at 7, ¶ 24.

[27]Id.

[28]Id. at 8, ¶ 26.

[29]Id. at ¶ 27.

[30]Id.

> XTO and committing resources to Pathfinder's contract with XTO. The Hilcorp Representative hinted that Fell needed to do whatever was necessary to ensure that XTO understood that there was an enforceable contract in place.[31]

Plaintiff alleges that

> Fell contacted Griffith on or about June 20, 2015 to further discuss the purchase of the Airbus EC and to again confirm the agreement between the two parties. Fell asked Griffith if they had an enforceable contract in place and Griffith assured Fell that the contract between the two parties was enforceable and binding....[32]

Plaintiff further alleges that "Fell asked Griffith a second time if the contract was binding, and explained that XTO's act of walking away from this contract 'had the potential to put him out of business.' Griffith again stated that the contract was enforceable, by responding as follows: 'Mike, this contract is solid.'"[33] Plaintiff alleges, however, that at this point in time, Griffith knew "XTO would later claim that the contract was no good for a number of reasons, including that there was no signed contract."[34]

Plaintiff alleges that "[o]n July 1, 2015, a little over a week after [its] purchase of the Airbus EC, and a little more than a week after Griffith assured Fell that the contract was

---

[31] Id. at ¶ 28.

[32] Id. at 10, ¶ 32.

[33] Id. at ¶ 33.

[34] Id. at 11, ¶ 35.

enforceable and 'solid', XTO announced that it had sold its Alaska operations to Hilcorp."[35]

Plaintiff alleges that "Griffith called Fell and told him that XTO would not be going forward with its contract with Pathfinder."[36] Plaintiff alleges that Griffith also sent an email on July 2, 2015, in which he "admitted that there was a 'contract' with Pathfinder, but [stated that] XTO would not be going forward with it 'due to the sale of [XTO's] Alaska assets.'"[37]

Plaintiff alleges that "[a]fter this communication, Fell attempted to contact Griffith and XTO regarding the contract, but to no avail."[38]

Plaintiff alleges that

> [s]ince XTO's communication indicating that it would not agree to the terms of the contract, and in order to avoid a monthly payment in excess of $40,000 to support and maintain the helicopters, Pathfinder sold the Bell 212 helicopter at a loss of over $140,000, and Pathfinder has been making every effort to sell the Airbus EC, but has not yet been successful.[39]

Plaintiff alleges that "[i]t is anticipated that due to the unique nature of the Airbus EC, which is a result of [XTO's] unusual specifications, the aircraft will likely be sold for a loss

---

[35] Id. at ¶ 36.

[36] Id. at ¶ 37.

[37] Id.

[38] Id. at ¶ 38.

[39] Id. at 11-12, ¶ 39.

of over $1 million."[40]

On September 17, 2015, plaintiff commenced this action. In its original complaint, plaintiff asserted six counts against defendants: 1) breach of contract, 2) breach of quasi-contract and quantum meruit, 3) promissory estoppel, 4) breach of the covenant of good faith and fair dealing, 5) misrepresentation, and 6) violation of Alaska Unfair Trade Practices Act. Defendants moved to dismiss the contract claims against Griffith, the breach of the covenant of good faith and fair dealing claim against XTO, and the misrepresentation and UTPA claims against both defendants.[41] Defendants also moved to strike plaintiff's prayer for punitive damages.[42] The court granted defendants' motion to dismiss but denied the motion to strike.[43] The court gave plaintiff leave to amend its breach of the implied covenant of good faith and fair dealing claim against XTO and its misrepresentation and UTPA claims against both defendants.[44]

Plaintiff timely filed an amended complaint. In its amended complaint, plaintiff asserts five counts: 1) a breach of contract claim against XTO, 2) a breach of quasi-contract and quantum meruit claim against XTO, 3) a promissory estoppel claim against XTO, 4) a

---

[40]Id. at 12, ¶ 39.

[41]Docket No. 10.

[42]Docket No. 10.

[43]Order re Motion to Dismiss; Motion for Leave to Amend at 19, Docket No. 20.

[44]Id.

negligent misrepresentation claim against XTO and Griffith, and 5) a UTPA claim against XTO and Griffith.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiff's negligent misrepresentation and UTPA claims and to strike plaintiff's prayer for punitive damages.

## Discussion

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests." Zixiang Li v. Kerry, 710 F.3d 995, 998 (9th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)). "To survive a Rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" Turner v. City and County of San Francisco, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008)). "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" Id. (quoting Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id.

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "This standard 'asks for more than a sheer possibility that a defendant has acted unlawfully,' but it 'is not akin to a probability requirement.'" Id. (quoting Iqbal, 556 U.S. at 678). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Defendants first move to dismiss plaintiff's negligent misrepresentation claim. The elements of a negligent misrepresentation claim are

> (1) the party accused of the misrepresentation must have made the statement in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, (2) the representation must supply false information, (3) there must be justifiable reliance on the false information supplied, and (4) the accused party must have failed to exercise reasonable care or competence in obtaining or communicating the information.

Reeves v. Alyeska Pipeline Service Co., 56 P.3d 660, 670-71 (Alaska 2002) (citations omitted).

> [A] cause of action for negligent misrepresentation is complete when the injured party has suffered a pecuniary loss as a result of the misrepresentation. To that extent, future occurrences can be related back to the time when the misrepresentation which resulted in the loss was made. However, to establish liability under this theory it is not enough to demonstrate that subsequent occurrences made an originally-accurate representation ultimately false. For a representation to be actionable, ... the representation must be false when made.

Bubbel v. Wien Air Alaska, Inc., 682 P.2d 374, 381 (Alaska 1984). While negligent misrepresentation does not require "proof that the maker knew of the untrue character of his or her representation[,]" it does require proof that the statement was false when made. Id.

Plaintiff alleges that Griffith made numerous representations that the parties had a binding and enforceable contract but that "[a]ll of these representations contained false information when they were made because XTO claims that there was never an enforceable contract in place...."[45] Plaintiff also alleges that these communications "were made without reasonable care or competence because each time Griffith communicated to Pathfinder that there was an enforceable contract in place, these representations were false due to XTO's belief that no contract ever existed."[46] By way of example, plaintiff alleges that when Griffith told Fell that the contract was "solid" in June 2015, "Griffith most certainly knew that XTO would not need Pathfinder's services", given that the sale to Hilcorp was announced a little over one week later.[47]

Defendants argue that plaintiff has not alleged any factual support for its allegations that Griffith's representations were false at the time they were made. Defendants

---

[45]First Amended Complaint at 15, ¶ 56, Docket No. 21.

[46]Id. at ¶ 57.

[47]Id. at ¶ 58.

acknowledge that plaintiff has alleged that Griffith told Fell that there was an enforceable contract on February 25, 2015; March 23, 2015; April 23, 2015; and on other unspecified dates between February and July 2015. But defendants argue that an after-the-fact change in circumstances, namely Hilcorp's acquisition of XTO's Alaska assets, does not make these statements false when made.

Defendants argue that nothing about the timing of events in this case suggests that Griffith's statements were false when made. Defendants contend that any inference based on the timing of events would be unreasonable, as the court has already decided. In opposition to the first motion to dismiss, plaintiff argued that the timing of events, XTO's unwillingness to sign the written contract, and XTO's refusal to communicate with plaintiff after XTO was acquired by Hilcorp gave rise to inferences that XTO knew all along that it was going to breach the contract and that XTO was seeking to maliciously cause plaintiff injury.[48] The court found that these inferences were not reasonable in part because plaintiff had not alleged that XTO knew for months that it was going to be sold to Hilcorp.[49]

Plaintiff has attempted to fix this problem in its amended complaint. Plaintiff has alleged that "on information and belief", XTO's negotiations with Hilcorp started in late

---

[48]Order re Motion to Dismiss; Motion for Leave to Amend at 12, Docket No. 20.

[49]Id.

-13-

2014 and continued into 2015.[50] Defendants argue that allegations based on "information and belief" are not sufficient. "But, [p]ost Twombly and Iqbal, the Ninth Circuit has not considered the sufficiency of ... allegations made on 'information and belief.'" Clifton v. Houghton Mifflin Harcourt Publishing Co., — F. Supp. 3d —, 2015 WL 9319402, at *3 (N.D. Cal. 2015). "The Second Circuit has, holding (in a copyright case) that the Twombly and Iqbal plausibility standard allows factual allegations made 'upon information and belief' where (1) 'the facts are peculiarly within the possession and control of the defendant,' or (2) 'where the belief is based on factual information that makes the inference of culpability plausible.'" Id. (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)). Here, the facts as to when Hilcorp and XTO began their negotiations would not be in plaintiff's possession and control, but rather XTO's. Thus, plaintiff has adequately alleged that XTO knew for several months that it is was going to be acquired by Hilcorp. More importantly, as to the timing of events, plaintiff alleges that on June 20, 2015, Griffith told Fell that the parties' contract was "solid", which was only a little over a week before Hilcorp's acquisition of XTO was announced. It is reasonable to infer from this timing that Griffith's representation on June 20, 2015 was false when made.

Defendants also argue that the fact that Griffith did not "immediately" sign a written contract does not give rise to an inference that Griffith's representations were false when

---

[50]First Amended Complaint at 7, ¶ 24, Docket No. 21.

-14-

made. Rather, defendants argue that the only inference that can be drawn from this "fact" is that the parties were still in contract negotiations.

But the facts alleged in plaintiff's amended complaint do not suggest that the parties were still in contract negotiations, but rather that defendants were stalling in signing the written contract. Plaintiff has alleged that many of the terms of the contract had been agreed upon by February 25, 2015 and that during the spring of 2015, there were only "minor remaining details" of the contract to be worked out.[51] And plaintiff has alleged that XTO did not send a written contract to plaintiff until May 8, 2015 and "then only after being continually requested to do so by Pathfinder."[52] "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Defendants' argument that the parties were still in contract negotiations until July 2015 is not so convincing that it makes plaintiff's contention to the contrary implausible. Plaintiff has alleged sufficient factual support for its contention that XTO was delaying signing the contract. That allegation, along with plaintiff's allegation

---

[51] Id. at 6, ¶ 21.

[52] Id. at 7, ¶ 22.

-15-

that XTO was in negotiations with Hilcorp by late 2014, is sufficient to suggest that Griffith's representations that the parties' contract was binding and enforceable were false when made.

Defendants also argue that plaintiff's allegations about Fell's conversation with the Hilcorp Representative do not suggest that Griffith's statements were false when made.[53] Defendants argue that it would not be reasonable to infer from these allegations that XTO and Griffith knew that they never intended to enter into a contract with plaintiff. Defendants point out that plaintiff expressly alleged that "the Hilcorp Representative did not inform Fell that Hilcorp was about to purchase XTO[.]"[54] Defendants argue that the Hilcorp Representative's alleged suggestion that plaintiff get contractual assurances simply does not demonstrate that Griffith's representations about an enforceable contract were false when made. Defendants insist that all plaintiff has alleged is that a Hilcorp Representative called Fell and told Fell to be careful and get contractual assurances from XTO, but defendants argue that these "facts" do not in anyway suggest that Griffith's representations about the parties' contract were false when made.

---

[53]Contrary to defendants' contention, the allegations about the phone call from the Hilcorp Representative to Fell are not the only new factual allegations in plaintiff's first amended complaint. Plaintiff's first amended complaint contains other factual allegations that were not in plaintiff's original complaint or in plaintiff's proposed first amended complaint.

[54]First Amended Complaint at 8, ¶ 28, Docket No. 21.

The alleged call from the Hilcorp Representative does suggest that Griffith's statements about there being a binding and enforceable contract were false. Even though the Hilcorp Representative did not mention the possible acquisition, the Hilcorp Representative appeared to be warning Fell that plaintiff's contract with XTO might not be as "solid" as Griffith was assuring Fell it was.

Plaintiff has adequately alleged that Griffith's representations that plaintiff and XTO had a binding and enforceable contract were false when made. Thus, plaintiff has stated a plausible negligent misrepresentation claim.

Defendants next move to dismiss plaintiff's UTPA claim. "Two elements must be proved to establish a prima facie case of unfair or deceptive acts or practices under the Alaska Act: (1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred." State v. O'Neill Investigations, Inc., 609 P.2d 520, 534 (Alaska 1980). "An act or practice is deceptive or unfair if it has the capacity or tendency to deceive." Id. "An act or practice need not be 'deceptive' to be 'unfair.'" Id. at 535. Factors the court may consider when determining whether an act or practice is unfair include

> "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or

> unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."

Id. (quoting F. T. C. v. Sperry & Hutchinson Co., 405 U.S. 233, 244-45 n.5 (1972)). Alaska law requires a plaintiff to demonstrate that the defendant did something more egregious than breach a contract or assert the non-existence of a contract. Kenai Chrysler Center, Inc. v. Denison, 167 P.3d 1240, 1256 (Alaska 2007); see also, Alaska Rent-A-Car, Inc. v. Cendant Corp., Case No. 3:03–cv–00029–TMB, 2007 WL 2206784, at *22 (D. Alaska July 27, 2007) ("The fact that an act is a breach of a contractual obligation does not, ipso facto, render it an unfair trade practice").

Plaintiff alleges that defendants

> engaged in unfair and deceptive practices, including but not limited to, the following: Misrepresenting their intent to contract with Pathfinder for its services; representing that Pathfinder's services had approval and status [they] did not have; engaging in conduct creating a likelihood of confusion or misunderstanding which misled, deceived and damaged Pathfinder in connection with the sale of good and services, specifically transportation services; and knowingly making false or misleading statements regarding the existence of a contract.[55]

Plaintiff's UTPA claim in its amended complaint is identical to the UTPA claim in its original complaint except for the allegation that defendants knowingly made false or misleading statements regarding the existence of a contract. Defendants argue that this

---

[55]First Amended Complaint at 17, ¶ 66, Docket No. 21.

new allegation is not sufficient to save plaintiff's UTPA claim because plaintiff has not pled any factual support for its allegation that Griffith's representations about the existence of a contract were false when made. Defendants insist that statements made about the parties' contract prior to Hilcorp's acquisition of XTO were true and only became false after the Hilcorp acquisition.

But, as discussed above, plaintiff has adequately alleged that at least some of Griffith's statements were false when made. False or misleading statements can be considered an unfair or deceptive act. See, e.g., Golber v. BayBank Valley Trust Co., 704 N.E.2d 1191, 1194 (Mass. Ct. App. 1999) (holding that negligent misrepresentation may be an unfair and deceptive act). Thus, plaintiff has stated a plausible UTPA claim.

Finally, defendants move to strike plaintiff's prayer for punitive damages. Defendants argue that even if plaintiff has alleged viable tort claims, which the court finds that plaintiff has, plaintiff's prayer for punitive damages should still be stricken because plaintiff has not alleged that defendants' conduct was 1) outrageous or done with malice or bad motives or 2) evidenced reckless indifference to the interests of another person. AS 09.17.020. Defendants point out that "[i]f the evidence does not give rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, then the trial court need not submit the issue of punitive damages to the jury." Hayes v. Xerox Corp., 718 P.2d 929, 935 (Alaska 1986). Defendants insist that plaintiff has not

alleged that they acted outrageously or with malice or bad motives. Rather, defendants contend that all plaintiff has alleged is a breach of contract.

Plaintiff has alleged more than a breach of contract here. A reasonable jury could conclude that defendants acted outrageously or with malice <u>if</u>, as plaintiff has alleged, XTO was negotiating with Hilcorp at the same time it was encouraging plaintiff to develop the infrastructure and buy the helicopters necessary for the contract.

## Conclusion

Defendants' motion to dismiss plaintiff's negligent misrepresentation and UTPA claims is denied as is their motion to strike plaintiff's prayer for punitive damages.

DATED at Anchorage, Alaska, this 4th day of May, 2016.

/s/ H. Russel Holland<br>
United States District Judge